**Louvinia JONES Plaintiff**

v.

**REICHERT JUNG, INC. Defendant**

**No. CIV.H–01–2815.**

United States District Court, D. Maryland.

July 26, 2002.

---

Roger N. Powell, Pikesville, MD, for Plaintiff.

Daniel R. Lanier, Miles and Stockbridge PC, Baltimore, MD, for Defendant.

### MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, plaintiff Louvinia Jones ("Jones") has sued defendant Reichert Jung, Inc. ("Jung") seeking damages for personal injuries. Jones lives in Balti- more City, and Jung is a corporation with its principal office in Buffalo, New York. Jurisdiction is based on diversity of citi- zenship pursuant to 28 U.S.C. § 1332. Maryland law is therefore controlling in this case.

For many years, plaintiff was employed at Johns Hopkins Hospital ("the Hospital") in Baltimore, Maryland. In part, her duties included the use and operation of the Frigocut 2800 cryostat, a microtome machine designed to slice frozen tissues so that slides may be made. Defendant Jung was the manufacturer of the Frigocut 2800. Plaintiff alleges that as a result of her operation of the machine, she suffered bilateral cubital tunnel syndrome and bi- lateral carpal tunnel syndrome requiring surgical repair.

The complaint is in three counts. Count I asserts a claim of breach of the warranty of merchantability. It is alleged that the machine at issue was not merchantable and that defendant's breach of the warran- ty of merchantability with regard to the sale of the machine which contained design and manufacturing defects was the proxi- mate cause of the injuries sustained by plaintiff. Count II seeks a recovery for breach of the warranty of fitness. It is alleged that the machine was not fit for the purpose for which it was manufactured because of design and manufacturing de- fects. Count III asserts a claim of negli- gence in the design and/or manufacture of the machine. It is alleged that defendant, with knowledge of the negligent design and/or manufacture of the machine, failed to warn plaintiff and others of the dangers of injury from use of the machine. Com- pensatory damages in the amount of $13,600,000 are sought by plaintiff.

Pursuant to Scheduling Orders entered by the Court, the parties have engaged in and completed discovery. Now pending is

defendant's motion to preclude plaintiff's experts and for summary judgment. In support of that motion, defendant has submitted numerous exhibits, including affidavits and excerpts from a deposition taken during discovery. Plaintiff in turn has filed an opposition to defendant's pending motion and has also submitted a number of exhibits. Recently, after defendant had replied to plaintiff's opposition, a hearing on defendant's motion was held in open court.

Following due consideration of the memoranda, exhibits and arguments of counsel, this Court has concluded that defendant's motion to preclude experts must be granted and that defendant's motion for summary judgment must also be granted. In the absence of admissible expert testimony indicating that the Frigocut 2800 cryostat machine was defectively designed or defectively manufactured, plaintiff is not entitled to proceed to trial in this case. Accordingly, summary judgment in favor of defendant will be entered.

I

*Background Facts*

Plaintiff Jones was employed as a technician in the pathology lab at the Hospital from March 1995 through January 2001. As a part of her job, Jones operated a microtome, namely the Frigocut 2800 cryostat machine manufactured by defendant. This machine is used to slice frozen tissue samples, after which slides are made from the samples for pathologists to study. In using the machine, plaintiff would sit in front of it, operating a hand crank while looking down into the machine to make the cuts.

In time, plaintiff while operating the machine began experiencing pain, numbness and tingling in her right arm, wrist and hand. She was diagnosed by her treating physician as having bilateral cubital tunnel syndrome and carpal tunnel syndrome. As a result, surgical procedures were undertaken to correct the problem. According to plaintiff, her medical problems were caused by her operation of the machine, which she alleges was designed and/or manufactured defectively.

In response to plaintiff's claim that her injuries resulted from her use of the machine, the Hospital directed an employee, James Bukowski ("Bukowski"), to conduct an ergonomic study of plaintiff's operation of the machine. Bukowski has been conducting ergonomic studies at the Hospital since 1995. He met with plaintiff in July of 2000, observed her operation of the machine, completed an Ergonomic Analysis Survey Form, and prepared a report dated July 19, 2000. Bukowski made three recommendations in his report for the improvement of plaintiff's work environment. Bukowski recommended: (1) rotating cutting duties among several employees; (2) contacting the manufacturer to determine if the handle could be lengthened and the diameter enlarged and padded; and (3) contacting the manufacturer to see if the gearing on the control wheel could be changed so that it required fewer revolutions for a given amount of cutting.

In a draft of the proposed Pretrial Order prepared by her attorney, Roger N. Powell, Esq., plaintiff has identified two liability experts whom she intends to call to testify at the trial, namely Bukowski and Edward J. Bernacki ("Bernacki").[1] Bukowski is an Assistant Environment Health Officer for the Health, Safety and

---

**1.** Plaintiff also intends to call Dr. Robert Lavin, her treating physician, to testify as to the issue of causation.

Environment Department at the Hospital. Bernacki is Associate Professor and Director, Occupational Medicine, Johns Hopkins University School of Medicine, and is the Executive Director of the Health, Safety and Environment Department at the Hospital.

After the close of discovery,[2] counsel for defendant approached Bukowski and Bernacki and obtained affidavits from them. In his affidavit dated June 21, 2002, Bukowski states that he had never concluded that the machine, the handle or the gearing were defectively or negligently designed or manufactured in any way. He also states that he never concluded that the machine was dangerous to use in its current configuration, that he made no determination if the machine contributed to plaintiff's injuries in any way and that he was rather in his report merely making recommendations to improve the working conditions of plaintiff and others. Bukowski further asserts that at no time has he agreed to testify as an expert witness in this case on behalf of the plaintiff and that he does not hold himself out as an expert on the design and manufacture of cryostat machines like the Frigocut 2800.

In his affidavit also dated June 21, 2002, Bernacki states that he reviewed and approved the report submitted by Bukowski, but that he did not participate in the ergonomic study. According to Bernacki, he has never conducted an ergonomic study of the Frigocut 2800. He further states that he has never made a determination or assessment that the machine at issue was defectively or negligently designed or manufactured in any way, nor did he determine that the machine caused plaintiff's injuries. Bernacki also asserts that he has

not agreed to be an expert witness in this case on behalf of plaintiff.

## II

### Defendant's Motion

Defendant Jung has first moved to preclude plaintiff's experts. It is argued that plaintiff has failed to comply with Scheduling Orders of this Court and with Rule 26(a)(2)(B), F.R.Civ.P., in designating and identifying her liability experts and in providing necessary written reports. It is next argued by defendant that the experts now named by plaintiff are not qualified to render opinions that the machine at issue was defectively designed or manufactured, and that their opinions do not properly establish a causal link between plaintiff's use of the Frigocut 2800 and her injuries. Defendant contends that, in the absence of relevant expert testimony both as to defect and causation, this Court should grant its motion for summary judgment.

In opposing defendant's pending motion, plaintiff asserts that she should not be barred from the use of her experts on the basis of the timeliness and the form of her disclosures of their identities and the reports provided. According to plaintiff, there are on the record here disputes of material fact as to whether the machine at issue was defectively designed or defectively manufactured and defendant maintains that such disputes should be resolved by the jury.

## III

### Summary Judgment Principles

It is well established that a defendant moving for summary judgment bears the burden of showing the absence of any gen-

---

**2.** Pursuant to the Second Revised Scheduling Order, depositions and all other discovery had to be completed by June 14, 2002.

uine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant may be liable under the claims alleged. *See* F.R.Civ.P. 56(e). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett*, 477 U.S. at 323, 106 S.Ct. 2548.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick*, 736 F.2d at 958–59 (quoting *Seago v. North Carolina The-*

*atres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir.1967), *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by the plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548).

Applying these principles to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted.

### IV

#### *Applicable Law*

■ In products liability litigation like this case, the plaintiff must satisfy three basics from an evidentiary standpoint: (1) the existence of a defect; (2) the attribution of the defect to the seller; and (3) a causal relation between the defect and the injury. *Jensen v. American Motors Corp., Inc.*, 50 Md.App. 226, 234, 437 A.2d 242 (1981). To recover on an implied warranty

or negligence claim, a plaintiff must prove the existence of a defect at the time that the product leaves the manufacturer. *Ford Motor Co. v. General Accident Ins. Co.*, 365 Md. 321, 334, 779 A.2d 362 (2001). To allow a jury to decide whether there was a breach of warranty, there must be some evidence beyond mere speculation which would enable the jury to rationally decide that it is more probable than not that the defect existed at the time of the sale. *Id.*

Maryland courts have adopted the general rule that expert testimony is required when the subject of the inference that a product is defective is particularly related to some science or profession that it is beyond the ken of the average layman. *Wood v. Toyota Motor Corp.*, 134 Md.App. 512, 516–17, 760 A.2d 315 (2000). In *Wood*, the issue was whether the plaintiff had been injured due to the defective design of an air bag. The Court there held that the correct resolution of that issue required the application of science, mechanics and engineering rather than the application of matters which jurors would be aware of by virtue of common knowledge. *Id.* at 518, 760 A.2d 315. The holding of the Court in *Wood* was that a products liability plaintiff claiming to have been injured due to the defective design of an air bag must present expert testimony to generate a jury issue on whether the air bag was defective. *Id.* at 518, 760 A.2d 315. The Court of Special Appeals affirmed the trial court's decision to exclude plaintiff's expert witness and to grant summary judgment in favor of the defendant because expert testimony was required. *Id.* at 514, 760 A.2d 315. In *Moser v. Agway Petroleum Corp.*, 866 F.Supp. 262, 264 (D.Md.1994), Judge Smalkin of this Court held that a heater involving mechanical parts and electrical circuits is not so simple a device that the average layperson's understanding and knowledge permit proceeding without expert testimony.

## V

### *Discussion*

#### (a)

#### *Preclusion of Experts*

█ Defendant first contends that plaintiff failed to timely designate her liability experts as required by the Court's Scheduling Order of October 17, 2001 and that she insufficiently identified her liability experts as required by Rule 26(a)(2). The Court's Scheduling Order required plaintiff to provide Rule 26(a)(2) disclosures on or before December 17, 2001. It was not until January 22, 2002 that plaintiff named Bukowski and Bernacki as her experts. Later, plaintiff provided defendant with a copy of Bukowski's ergonomic survey dated July 19, 2000. It was that survey which made certain recommendations concerning the use of the Frigocut 2800 at the Hospital. Defendant maintains that neither Bukowski nor Bernacki should be permitted to testify at the trial because of plaintiff's failure to comply with the Court's Scheduling Order and with Rule 26(a)(2).

On the record here, the Court will not exclude these two proposed expert witnesses of plaintiff because of procedural defaults. The participation of Bukowski and Bernacki as proposed experts in this case is indeed somewhat unusual. Neither one of them has been retained by plaintiff as an expert, and neither one has agreed to testify as an expert witness on behalf of plaintiff Jones. Although counsel for plaintiff corresponded with both Bukowski and Bernacki, they were not personally interviewed, and their depositions have not been taken. It was not until counsel for defendant obtained affidavits from these two witnesses that the nature of their proposed testimony was revealed.

Although for the reasons stated hereinafter, Bukowski and Bernacki will not be permitted to testify in this case as liability experts, their testimony will not be precluded because of plaintiff's procedural defaults. Defendant has not been prejudiced by plaintiff's failure to strictly comply with the Court's Scheduling Order or with Rule 26(a)(2). Indeed, once counsel for defendant learned the identity of these two witnesses, arrangements were made for the signing by them of affidavits which, as explained hereinafter, have a conclusive effect on the outcome of this litigation.

■ Defendant next argues that the two individuals whom plaintiff intends to call as liability experts are not qualified to render expert opinions in this case and that they should therefore be precluded from testifying. On the record here, this Court would agree.

■ The Frigocut 2800 is a cryostat frozen tissue slicer. Since its components include rotating blades and a cryostat chamber, it is clearly a complex piece of machinery. Expert testimony is required in this case because the liability issues require the application of science, mechanics and engineering rather than ordinary matters which jurors would be aware of by virtue of common knowledge. *Wood,* 134 Md.App. at 518, 760 A.2d 315. To prevail, plaintiff must prove that a design or manufacturing defect existed in the machine at the time of its sale. *Ford Motor Co.,* 365 Md. at 334, 779 A.2d 362. The resolution of the liability issues in this case requires consideration of complex machinery and knowledge of complicated matters such as mechanics, electricity, engineering and metallurgy. *See Holzhauer v. Saks & Co.,* 346 Md. 328, 341, 697 A.2d 89 (1997).

The affidavit of Bukowski establishes that he does not hold himself out as an expert on the design and manufacture of cryostat machines like the Frigocut 2800. In the course of his ergonomic study, he did not conclude that the machine at issue was defectively or negligently designed or manufactured in any way. In his affidavit, Bernacki similarly stated that he had at no time ever made any determination or assessment that the Frigocut 2800 machine was defectively or negligently designed or manufactured. Bernacki never inspected the Frigocut 2800 machine or participated in any other way in the ergonomic study made by Bukowski. He merely reviewed and approved Bukowski's report. These two affidavits conclusively establish that neither Bukowski nor Bernacki is qualified to give expert testimony in this case.[3]

In arguing that both Bukowski and Bernacki should be permitted to testify as experts in this case, plaintiff places heavy reliance on the written report dated July 19, 2000, which was prepared by Bukowski and approved by Bernacki. But this report merely makes recommendations for improvements of the working conditions of hospital employees using the Frigocut 2800. Although the report contained the suggestion that the Hospital contact the manufacturer of the machine to see if certain changes could be made in order to simplify its operation, the report did not conclude that the Frigocut 2800 had been defectively designed or manufactured.

3. In Count III of the complaint, plaintiff has alleged that defendant having knowledge of the negligent design and/or manufacture of the machine failed to warn plaintiff of the dangers of injury from the use of the machine. Since neither Bukowski nor Bernacki is qualified to present evidence that the Firgocut 2800 was in any way defective, they would not be entitled to testify in support of the claim of failure to warn asserted by plaintiff in Count III of the complaint. *See Higgins v. Diversey Corp.,* 998 F.Supp. 598, 605 (D.Md.1997), *aff'd.,* 135 F.3d 769 (4th Cir. 1998).

■ At the hearing on defendant's motion, the Court expressed some concern that the two affidavits in question had been obtained after the close of discovery. The Court offered counsel for the plaintiff the opportunity to depose these two individuals and present evidence to the Court which might counter statements in their affidavits. However, Mr. Powell declined the Court's offer and stated that he was satisfied that Bukowski's report and other evidence here constituted sufficient proof to raise an issue of material fact as to liability and defeat defendant's motion for summary judgment. The Court is satisfied, however, that the report in question, when considered together with the affidavits of Bukowski and Bernacki, is not sufficient to permit these two individuals to testify as expert witnesses in this case. Proof of a defect must arise above surmise, conjecture or speculation, and a plaintiff's right to a recovery may not rest on any presumption resulting from the happening of an injury. *Jensen,* 50 Md.App. at 232, 437 A.2d 242.

■ In her opposition to defendant's pending motion, counsel for plaintiff complained that the *ex parte* contact of defendant's attorneys with Bukowski and Bernacki was improper. However, no party to litigation has anything resembling a proprietary right to a particular witness's evidence. *Doe v. Eli Lilly & Co., Inc.,* 99 F.R.D. 126, 128 (D.D.C.1983). Absent a privilege, no party is entitled to restrict an opponent's access to a witness by insisting upon some notion of allegiance. *Id.; Felder v. Wyman,* 139 F.R.D. 85, 88 (D.S.C.

1991). Application of this principle is particularly pertinent in this case, since neither Bukowski nor Bernacki was ever retained by plaintiff to testify as experts at the trial of this case. It was therefore not improper for counsel for defendant to contact them and obtain affidavits from them.

Since both Bukowski and Bernacki are not qualified to testify as experts in this case, defendant's motion to preclude will be granted.[4]

(b)

*Summary Judgment*

■ In the absence of competent expert testimony establishing that the Frigocut 2800 was in any way defective at the time of sale, plaintiff may not proceed to trial on any of the claims asserted in her complaint. Indeed, at the hearing, counsel for plaintiff conceded that in the absence of the testimony of Bukowski and Bernacki there would not be sufficient evidence in the record to create a genuine issue of material fact as to liability.[5]

This Court concludes on the record here that plaintiff has not produced competent evidence of the existence of a defect in the Frigocut 2800 machine at the time of its sale. The warranty claims asserted by plaintiff in Count I and Count II must therefore fail. Moreover, there is no evidence in this record indicating that defendant Jung was negligent in the design and/or manufacture of the machine. Since defendant therefore had no duty to warn plaintiff that one using the machine would be exposed to the danger of injury, plain-

---

4. Inasmuch as the two individuals named by plaintiff as liability experts will be precluded from testifying as to liability, there is no need for the Court to consider defendant's further argument that Dr. Robert Lavin, plaintiff's treating physician, should not be permitted to testify that there was a causal link between the alleged defect and plaintiff's injuries.

5. A similar concession was made by plaintiff in the memorandum filed by her in opposition to defendant's pending motion. It was there conceded that if defendant by virtue of its motion "is able to eliminate Plaintiff's experts, then, clearly, no issue of fact can be raised." (Memorandum in Opposition at p. 5).

tiff is also not entitled to proceed to trial on Count III of the complaint. Summary judgment in favor of defendant Jung will therefore be entered.[6]

## VI

### Conclusion

For all the reasons stated, this Court concludes that plaintiff is not entitled to rely in this case on the proposed liability experts named by her. Since these individuals may not testify at the trial, defendant's motion to preclude will be granted. In the absence of expert testimony presenting proof of defendant's liability, defendant's motion for summary judgment will also be granted. An appropriate Order will be entered by the Court.

---

**6.** Defendant has also argued that it is entitled to summary judgment on Counts I and II because these claims of plaintiff are barred by limitations. Since the Court has concluded that defendant's motion for summary judgment must be granted in its entirety for other reasons, it is not necessary to consider defendant's other arguments.