J-S37004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JAMES P. MCGOVERN AND SHANA L. MCGOVERN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| EAST END GUN CLUB OF SCHUYLKILL COUNTY, PA; DEAN BICKEL; ALVIN HEIM, A/K/A ALVIN A. HEIM, HIS HEIRS, SUCCESSORS AND ASSIGNS; AND BENJAMIN S. DEWALD; HIS HEIRS, SUCCESSORS AND ASSIGNS | |
| Appellees | No. 1954 MDA 2013 |

Appeal from the Order Entered October 4, 2013
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s): S-172-2009

BEFORE:  LAZARUS, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:          **FILED SEPTEMBER 25, 2014**

James and Shana McGovern ("the McGoverns") appeal from the order entered in the Court of Common Pleas of Schuylkill County denying their petition to quiet title.  Upon review, we affirm.

In September 1950, the Honorable (then attorney) Donald Dolbin of the Schuylkill County Court of Common Pleas purchased a parcel of land from the Schuylkill County Tax Claim Bureau at an upset sale. The deed reflects the property was owned by Alvin Heim and sold for $90.00.   **See** 1950 Tax Claim Bureau Deed, Exhibit 9; R.R. at 240a.  Dolbin placed the title to the property in the names of Anne Palmer Dolbin and Jane Palmer

Craig, his wife and sister (hereinafter "Sellers"). The property is landlocked and unimproved.

Dolbin paid real estate taxes on the property until his death in 2000. Thereafter, Dolbin's son, the Honorable Cyrus Palmer Dolbin, as one of the co-executors, paid the real estate taxes until 2008, when Sellers entered into an agreement of sale with the McGoverns. In 2010, the McGoverns divorced. Since then, James McGovern has paid the taxes.

Pursuant to the terms of the agreement of sale, the McGoverns were responsible for securing a registered survey of the tract, securing an abstractor in order to establish the chain of title, and proceeding with the action to quiet title. The McGoverns acknowledged that the agreement of sale called for the sale of 75.8 acres, indicated in the tax assessment records, in contrast to the 83-acre tract found in the 1950 tax claim deed to Dolbin. The McGoverns further acknowledged that the registered surveyor determined the tract was actually approximately 67 acres.

After signing the agreement of sale, the McGoverns walked around the boundaries of the property and observed warning signs posted by East End Gun Club of Schuylkill County ("East End"). Walter J. Manhart, the registered surveyor, secured all the adjacent deeds, assessment maps, zoning maps and surveys he could find. Using these instruments, Manhart

developed a legal description[1] of the property in question; he determined that the tract consisted of 67.904 acres. Additionally, he determined that in 1963, while East End was conducting a survey of its land, it surveyed into its deed a 50-acre parcel of the Dolbin tract.

The McGoverns filed an action seeking a court order requiring East End, Dean Bickel, Alvin Heim and Benjamin Dewald (collectively, "Defendants")," to bring an ejectment action or forever be barred from asserting a claim to the land. *See* Pa.R.C.P. 1060(b)(1). The McGoverns also alleged that they held title by virtue of the deeds set forth in their chain of title, including the 1950 Tax Claim Bureau Deed, and that Defendants had no basis to claim title because the disputed land is not included in any deed by East End.

In its answer, East End admitted that it acquired title by way of recorded deed dated February 11, 1963. *See* Answer to Complaint and New Matter, 2/11/2009, at ¶ 11; R.R. at 24a, In that deed, the Trustees of East End conveyed to themselves 50 more acres of land than was contained in the prior deed for the same land. *See* Deed, 8/7/1930, recorded at Deed Book 560, page 35 for 100 acres. *See also* Plaintiffs' Exhibit 4; R.R. at

_____

[1] A legal description is a formal description of real property, including a description of any part subject to an easement or reservation, complete enough that a particular piece of land can be located and identified. The description can be made by reference to a government survey, metes and bounds, or lot numbers of a recorded plat. Black's Law Dictionary 746 (8th ed. 2005).

242a;  Deed,  2/11/1963,  recorded  at  Deed  Book  1042,  p.  1083,  for  150 acres, Plaintiff's Trial Exhibit 5;  R.R. at 243a.

At trial, Manhart testified that at no time did he specifically identify the 83 acres referenced in the tax claim deed.

Devon  Henne,  the  expert  testifying  for  East  End,  did  not  perform  a field  survey  but,  instead,  examined  the  legal  description  of  the  property  in order  to  identify  the  properties  involved  and  to  try  to  come  up  with  some kind  of  definition  of  the  property.   It  became  apparent  to  Henne  that  the instant  dispute  was  more  of  a  title  dispute  than  a  boundary  dispute.   Henne determined  that  the  disputed  area,  which  was  described  in  the  Manhart survey,  was  patented  to  James  Everhart  on  November  19,  1841.   Henne asserted  that  the  lack  of  an  ability  to  trace  title  forward  to  East  End  and  the Dolbins  creates,  from  Everhart,  a  cloud  on  the  title  for  both  parties  in  the disputed area.

The McGoverns preserved numerous issues for appellate review:

I.      Whether the trial court clearly erred in concluding that the McGoverns failed to introduce prima facie evidence of title by a preponderance of the evidence, and should have entered verdict to quiet title in their favor?

   a. Whether the McGoverns' 1950 tax claim bureau deed is prima facie evidence of title?

   b. Whether the trial court failed to consider the uncontroverted evidence of the McGoverns' surveyor, Walter Manhart?

   c. Whether East End Gun Club failed to show superior title?

    d. Whether the trial court erred in denying the McGoverns' pretrial motion in limine and in admitting the East End Gun Club's 1963 straw deed into evidence?

    e. Whether the trial court erred in failing to render a verdict in favor of either party and in suggesting that the parties return to the status quo and amicably resolve the matter themselves?

    f. Whether the trial court's rulings denying motions for a nonsuit and directed verdict are inconsistent with the trial court's order declining to render a verdict?

II. Whether the trial court erred in concluding that the McGoverns failed to properly serve two of the four defendants?

    a. Whether the sheriff's return of service upon all four defendants is conclusive and cannot be challenged?

    b. Whether a party who accepts service as the agent for the other defendants cannot be allowed to challenge that service on the eve of trial?

    c. Whether the trial court erred in suggesting that the McGoverns could at this point reopen the record to secure proper service?

Appellants' Brief, at 2-4.

The trial court stated:

The court is confronted with a claim and procedural history seeking to quiet title that appears substantially flawed at the outset. Implicitly we are called upon to discern which of the two parties has "superior" flawed title to the disputed tract. In-depth discussion, for example, as to whether plaintiff is a party in possession is unnecessarily academic in light of this record. Simply stated, we cannot find that plaintiff sustained his burden of proof as to the disputed 50 plus acres nor the remaining 17 acres which remaining acreage has not directly been challenged by East End. Additionally, we are not further persuaded that Defendant East End has staked a superior claim to the disputed 50[-]acre parcel warranting a decree in its favor.

We need look no further than the 1950 tax claim deed to determine that the McGoverns did not satisfy their evidentiary burden. In order to meet that burden, the McGoverns first had to establish a *prima facie* showing of title allowing for the burden of proving superior title to shift onto East End Gun Club.

The burden of proof in a quiet title action is upon the plaintiff. **Montrenes v. Montrenes**, 613 A.2d 983, 984 (Pa. Super. 1986). The McGoverns assert that it is "beyond dispute that a tax sale deed is conclusive proof of ownership and title." **See** Brief of Appellants, at 18. The McGoverns cite three cases in support of this claim. The first, **Curtis Building Co., Inc. v. Tunstall**, 343 A.3d 389, 394-94 (Pa. Cmwlth. 1975), involved an action to quiet title and obtain possession of property. There, the Commonwealth Court determined that an unrecorded treasurer's deed made out a *prima facie* case of tax sale purchaser's title. The second case the McGoverns cite is **Hughes v. Chaplin**, 135 A.2d 200, 202 (Pa. 1957). There, our Supreme Court found that the plaintiff had established a prima facie case to sustain title by producing the county treasurer's deed.[2] Lastly, in support of their argument that a tax deed is prima facie evidence of good title, the McGoverns cite **Clark v. Weinberg**, 393 A.2d 507 (Pa. Cmwlth. 1978). In that action to quiet title, the Commonwealth Court held that the

---

[2] County treasurer deed is synonymous with a tax deed. **See Beacom v. Robinson**, 43 A.2d 640 (Pa. Super. 1945).

description of property was sufficient to identify property to tax collectors and the public notwithstanding the contention that the description was insufficient. *Id*. at 509. While these cases all indicate that tax deeds can be evidence of ownership and title, it does not necessarily follow that all tax deeds qualify as *prima facie* evidence of good title.

The **Clark** decision is especially relevant here. In **Clark**, the tax deed contained various details describing the location of the property. For example, the deed included a lot and a block number. *Id*. at 510. The deed also contained the name of the former property possessor, which made the property more identifiable. *Id*.

Here, the tax deed initially received by the Dolbins and then subsequently passed on to the McGoverns merely contains a description of the acreage of the property, a description of the condition of the land, and the township in which the property is located. The deed does not contain any other type of legal description that would allow for a survey to accurately define where the boundaries of the property exactly lie. The 1909 deed suffers from a similar lack of legal description that would suffice for prima facie evidence of good title.

It is well established that no tax sale of land is valid unless both the assessment and the conveyance by the treasurer contain sufficient descriptions to identify and disclose the property taxed and sold. **Bannard v. New York State Natural Gas Corp.**, 293 A.2d 41 (Pa. 1972). While the present dispute does not involve the validity of the tax sale, for the tax deed

to qualify as adequate *prima facie* evidence of good title, which would shift the burden of proving superior title to East End, it is still necessary for the deed to contain a sufficient description.

The plaintiffs' burden in an action in ejectment at law is clear: they must establish the right to immediate exclusive possession. *See, e.g.*, *Hallman v. Turns*, 482 A.2d 1284, 1287 (Pa. Super. 1984); *Harbor Marine Co. v. Nolan*, 366 A.2d 936 (Pa. Super. 1976). Recovery can be had only on the strength of their own title, not the weakness of defendant's title. *See Artz v. Meister*, 123 A. 501 (Pa. 1924); *Ratajski v. West Penn Manufacturing & Supply Corp.*, 182 A.2d 243 (Pa. Super. 1962). The crux of an ejectment action, therefore, rests with the plaintiffs' ability to identify, by a preponderance of the evidence, *see Hallman*, 482 A.2d at 1288 (citing *Rook v. Greenewald*, 22 Pa.Super. 641, 643 (1903)), the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title.

The McGoverns' surveyor, Manhart, conceded during cross-examination that he had not specifically identified the 83 acres referenced in the tax claim deed. Trial Court Opinion, 9/11/2013, at 11. In this regard, plaintiff has the burden of presenting definite and certain evidence of the boundary of the property in controversy. Where the plaintiff is unable to establish his boundary line by adequate legal proof, his action must fail and he is not entitled to relief. *Hallman v. Turns*, 482 A.2d 1284, 1288, (Pa. Super. 1984) (*citing Skillman v. Magill*, 98 Pa. Super. 72 (1930)).

The McGoverns, and to some extent Henne, the expert hired by East End, have cast doubt on the strength of the title held by East End. In their brief, the McGoverns relied on the perceived relative weakness of, and cloud on, East End's title to argue that the court should quiet title in their favor. However, unless and until the McGoverns have made a *prima facie* case by showing title sufficient upon which to base a right of recovery, the burden does not shift, and East End is not required to offer evidence of its title. If the McGoverns fail to establish proof of title with the required clarity, they cannot recover, no matter how defective East End's title may be. ***Fried***, ***supra*** at 6; ***see Doman v. Bogan***, 592 A.2d. 104, 108 (Pa. Super. 1991).

For the reasons stated above, we are unable to conclude that the trial court erred. The trial court properly found that the McGoverns failed to meet the evidentiary standard that would allow the burden of proving superior title to shift to East End Gun Club. Because the McGoverns failed to make a prima facie showing of good title, the trial court was in no position to weigh the relative strength of the parties' claims to the disputed area. Therefore, the remaining claims of error made by the McGoverns do not warrant further consideration.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary Date: 9/25/2014

- 9 -