J-S45012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TIMBER RIVER DEVELOPMENT CORPORATION, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JOHN A. MCANINCH, | |
| Appellee | No. 1207 WDA 2015 |

Appeal from the Order Entered July 16, 2015
In the Court of Common Pleas of Jefferson County
Civil Division at No(s): 1001-2009 CD

BEFORE:  OLSON, DUBOW AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 16, 2016**

Appellant, Timber River Development Corporation, appeals from the order entered on July 16, 2015 entering judgment in favor of John A. McAninch (McAninch) with regard to a 30-acre tract of land located in Jefferson County, Pennsylvania.  Upon review, we affirm.

The trial court summarized the pertinent facts of this case as follows:

> In a deed dated March 13, 1906, Frank and Ester Milton conveyed to F.J. Jerome the 30 acres of property that is now the subject of [this appeal].  On June 13, 1927, F.J. Jerome divided the 30-acre parcel into two tracts, one containing 11.221 acres and the other containing 18.779 acres.  The former he deeded to The New York Central Railroad Co. and the latter to Savings & Trust Company of Indiana ("S&T").  The New York Central Railroad Co. subsequently merged into Consolidated Rail Corp. ("Consolidated"), which thus became the owner of the 11.221-acre tract.  S&T conveyed the other 18.779 acres to Consolidated by deed dated April 6, 1982, thereby giving Consolidated the full 30 acres once owned by Frank Milton.

*Retired Senior Judge assigned to the Superior Court.

An undated railroad valuation map, designated as V.228A/29, depicts the 30 acres as two separate parcels belonging to Frank Milton, but with the acreage undivided. The parties stipulated to its authenticity as the valuation map referenced in [Appellant's] chain of title. Reference to that and other valuation maps first appeared in a 1991 deed whereby Consolidated conveyed multiple parcels of land to Mountain Laurel Railroad Co. Purporting to transfer, inter alia, "ALL as generally shown on the Grantor's Valuation Maps V228A/18 through 228A/30 inclusive," Consolidated included the subject 30 acres in that conveyance.

Subsequent deeds between Mountain Laurel and Pittsburgh [&] Shawmut Railroad Co., Pittsburgh & Shawmut and Kovalchick Corp., and Kovalchick Corp. and [Appellant] either explicitly or implicitly incorporated the parcels represented in valuation map V.228A/29. As well as describing the property by reference to the valuation maps, the deed from Consolidated to Mountain Laurel referred to the conveyance as "BEING a part or portion of the same premises which … [the] Trustees of the Property of Penn Central Transportation Company, Debtor, by Conveyance Document No. PC-CRC-RP-185, dated March 30, 1976 … granted and conveyed unto Consolidated Rail Corporation." S&T was still the title owner of 18.779 of the subject 30 acres on March 30, 1976. Except by reference to [valuation map V.228A/29], [Appellant's] chain of title does not denote a 30-acre tract. Nor does it contain reference to 18.779 or 11.221 acres.

By deed dated September 22, 1988, Samuel and Ruth Serian acquired the aforementioned 18.779 acres pursuant to their purchase at a tax sale held by the Tax Claim Bureau of Jefferson County. Listed as containing 18.78 acres, more or less, and identified as tax parcel 32-342-0103, its designated boundaries were "[o]n the North by Rail Road Tracks; [o]n the East by P. McGiffin; [o]n the South by Redbank Creek; [and] [o]n the West by J. MacAninch and GRC Mining." Consolidated received notice of the tax sale, as well as a letter apprising it of its right to claim the sum of $4,293.45 within 3 years of the date of the sale.

Using the same description contained in the deed by which they received the property, Samuel and Ruth Serian

granted it to Stacey Shively by deed dated April 15, 1993. Ms. Shively re-conveyed it to William Simpson Lumber Co. ("Simpson") 6 days later and Simpson sold it to McAninch and Robin Muller [sic] via quit-claim deed less than two months after that. The deed to McAninch and Mullen, contained the following expanded description of the property:

> BEGINNING at a point in the center of Red Bank Creek being the Northeast corner of the premises hereby conveyed and the Southeast corner of lands formerly of Ella E. Furgeson now John A. McAninch and Robin A. Mullen; thence in a Southerly, Westerly and Northerly direction in a semi-circular line along Red Bank Creek to a point in the intersection of Red Bank Creek and line of land formerly of Samuel Lucas now John A. McAninch and Robin A. Mullen; thence Easterly along land formerly of Samuel Lucas now John A. McAninch and Robin A. Mullen and land formerly of Joseph McGiffin now John A. McAninch and Robin A. Mullen, to a point the place beginning; CONTAINING 30 Acres, more or less.

> The Southern portion of the above premises was conveyed by F.J. Jerome et ux. to the New York Central Railroad Co. by merger later Consolidated Rail Corporation as 11.221 Acres by deed dated June 13, 1927 and recorded in the Office of the Recorder of Deeds for Jefferson County, Pennsylvania, in Deed Book 186, page 471. The Northern portion of the premises was conveyed by Savings and Trust Company of Pennsylvania, to Consolidated Rail Corporation, by deed dated April 6, 1982 as 18.779 Acres and recorded as aforesaid in Deed Book 481, page 743. The Tax Claim Bureau of Jefferson County, Pennsylvania, conveyed the premises at 18.7 Acres and property of Consolidated Rail Corporation by Tax Claim Deed to Samuel Serian and Ruth Serian, his wife, dated December 29, 1988 and recorded as aforesaid in Deed Book 529, page 730, for delinquent 1986 taxes. Samuel Serian et ux. conveyed the premises to Stacey Shively, by deed dated April 15, 1993 and recorded as aforesaid in Record Book 3, page 487. Stacey Shively conveyed

the premises as 18.78 Acres to William Simpson Co.,
Inc., by deed dated April 21, 1993 and recorded as
aforesaid in Record Book 4, page 371.

The final deed in [McAninch's] chain of title purported to
transfer the entire 30 acres solely to [him].

Since 1993, McAninch has been in possession of and paid
taxes on the subject property. Current Tax Claim records
indicate that the subject property was first assessed as
18.78 acres in 1988 but was later changed to 30 acres, the
"18.78" having been red-lined and replaced with "30." The
assessment card did not indicate when or why the change
was made, and the current director could not testify as to
the former director's policy for allowing such changes. That
was the only record the director produced with respect to
the subject property; she could not locate any independent
record, including an exempt card, relating to the 11.221
acres first conveyed to The New York Railroad Co. She
testified that current records only went back to 1957. Tax
parcel 32-342-0103 was eventually consolidated into tax
parcel 32-342-0102, which is comprised of 77.69 acres
assessed to McAninch. On March 6, 2007, McAninch
entered into an oil and gas lease authorizing … drilling
operations for the production of oil and gas on all of tax
parcel 32-342-0102.

Trial Court Findings of Fact 1/12/15, at 1-3 (brackets in the original,

footnote incorporated, and bullet-point format and record citations omitted).

In September 2009, Appellant filed an action to quiet title to several

parcels of land, including the 30-acre plot currently at issue as described

more fully above.[1] On June 1, 2015, the trial court held a bench trial on

Appellant's action to quiet title to the disputed 30-acre plot. On June 12,

_____

[1] On January 13, 2015, the trial court granted Appellant's motion for partial
summary judgment with respect to other parcels of land as set forth in
Appellant's complaint. That determination is not in dispute.

2015, the trial court entered a verdict for McAninch. On June 22, 2015, Appellant filed a motion for post-trial relief. The trial court denied relief by order entered on June 24, 2015. On July 16, 2015, Appellant filed a praecipe for the entry of final judgment. This timely appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

    I.     Whether the trial court erred and abused its discretion in finding the evidence presented by [Appellant] did not sufficiently set forth, by a preponderance of the evidence, prima facie title to the 11.221 acre portion of the 30-acre tract at issue in Count I of [Appellant's] complaint.

    II.    Whether the trial court erred, and committed an error of law, in quieting title in favor of the Appellee, John McAninch, when McAninch failed to present evidence of superior title to that presented by [Appellant].

Appellant's Brief at 4.

Both of Appellant's issues focus on the trial court's decision to quiet title to a specific parcel of land in favor of McAninch and, therefore, we will examine them together. Primarily, Appellant notes that the subject 30-acres of property was "divided into two separate parcels in 1927, an 11.221 acre parcel and an 18.79 acre parcel." *Id.* at 13. "While initially claiming title to

_____

[2] On August 3, 2015, Appellant filed a notice of appeal. On August 14, 2015, the trial court entered an order pursuant to Pa.R.A.P. 1925(b) directing Appellant to file a concise statement of errors complained of on appeal. Appellant complied timely on September 2, 2015. On September 3, 2015, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) relying on its prior rationale as expressed in its findings of fact, entered on January 12, 2015, and its denial of Appellant's motion for post-trial relief, filed on June 24, 2015.

the 18.79 acre portion of the original 30 acre tract, [Appellant] has conceded that the 18.79 parcel traveled a different chain of title from 1927, ultimately being sold by the Tax Claim Bureau of Jefferson County as the property of Consolidated Railroad predecessor[-]in[-]title to [] McAninch." *Id.* at 13-14.

Appellant claims, however, that the trial court erred by determining Appellant did not establish *prima facie* title to the 11.221 acre parcel by a preponderance of the evidence. *Id.* at 15. Appellant avers it presented evidence of "record chain of title to the 11.221 acres beginning in 1927 as said parcel was described as Parcel 9 on [] Railroad Valuation Maps, and incorporated into the deeds of record by reference thereto." *Id.* at 13. Appellant maintains that the trial court's determination that the railroad valuation map was not credible evidence was contrary to its prior decision granting Appellant's partial motion for summary judgment with regard to the other parcels at issue. *Id.* at 19. Appellant contends that Consolidated conveyed the 11.221-acre parcel to Mountain Laurel Railroad, Mountain Laurel Railroad then conveyed the property to Kovalchick, and Kovalchick ultimately conveyed the property to Appellant. *Id.* at 16-17.

In its second issue presented, Appellant claims "[t]he trial court's decision to enter a verdict in favor of McAninch could not be supported by competent evidence unless McAninch entered evidence of a direct line of title that was superior to that offered by [Appellant]." *Id.* at 22. It further argues that "[o]ther than his 1993 deed that conveyed a revised, expanded

description of the 18.788 acres, McAninch has no record claim of title to the 11.211 acre panel." *Id.*

"[W]hen reviewing a trial court's decision in a quiet title action, an appellate court must determine whether the findings of fact that led to the legal conclusion of abandonment of a property interest were supported by competent evidence." **Thompson v. Maryland and Pennsylvania R.R. Preservation Soc.**, 612 A.2d 450, 452, (Pa. Super. 1992) (internal citation omitted). "Ordinarily, an appellate court will not reverse a determination of the trial court in a quiet title action absent an error of law or capricious disregard of the evidence." *Id.* Moreover, "[i]t is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the fact[-]finder." **Agostinelli v. Edwards**, 98 A.3d 695, 704 (Pa. Super. 2014).

The burden of proof in a quiet title action is upon the plaintiff. **Montrenes v. Montrenes**, 613 A.2d 983, 984 (Pa. Super. 1986). "To prevail in an action to quiet title, the plaintiff must demonstrate title by a fair preponderance of the evidence." **Poffenberger v. Goldstein**, 776 A.2d 1037, 1041 (Pa. Cmwlth. 2001). This Court previously determined:

> This rule places upon the plaintiff the burden of proving a *prima facie* title, which proof is sufficient until a better title is shown in the adverse party. […] Until and unless the plaintiff has made a *prima facie* case by showing title sufficient upon which to base a right of recovery, the defendant is not required to offer evidence of his title. If it is admitted or shown that both parties derive their title from a common source, neither party need prove anything

regarding the prior title to that property. Further, if the plaintiff traces title to himself from the common source, he thereby makes out a *prima facie* case in his favor, calling upon the defendant to prove his alleged title if he wishes to defeat the plaintiff's apparent ownership.

***Hallman v. Turns***, 482 A.2d 1284, 1287 (Pa. Super. 1984).

In quieting title, the trial court determined:

Neither party appears to possess a better claim of title to the 11.221 acres [in dispute].

The Tax Claim Bureau purported to convey parcel 32-342-0103 as 18.78 acres and originally assessed it that way. Without explanation, that assessment later changed to 30 acres and never reverted back. Current tax records thus show that McAninch owns all 30 acres, not just 18.78 of them. His deeds – the 1993 deed and the 1996 deed – likewise recited 30 acres, as well as a detailed description of the property not theretofore evidenced in the preceding deeds. That evidence did not establish conclusively that McAninch in fact owned the additional 11.221 acres, though, as it offered no indication as to how they got added to the assessment or the deeds.

[Appellant's] evidence, on the other hand, was not any stronger.

Once again, the first distinct reference to the 30 acres appeared in the 1991 deed from Consolidated to Mountain Laurel. As the [trial court] indicated, though, that evidence was demonstrably faulty. Not only had the 1988 tax sale clearly divested Consolidated of 18.779 of those acres, thereby making it impossible for [Consolidated] to transfer [the acreage] to Mountain Laurel, but the conveyance was also suspicious insofar as the deed referred to the 30 acres "**as part or portion of the same premises** which … [the] Trustees of the Property of Penn Central Transportation Company, Debtor, by Conveyance Document No. PC-CRC-RP-185, dated March 30, 1976 … granted and conveyed unto Consolidated Rail Corporation" when Consolidated did not actually acquire S&T's 18.779 acres until 1982. That being the case, the [trial court was] unwilling to accept the

1991 deed and accompanying valuation map as credible evidence that Consolidated in fact conveyed the other 11.221 acres to Mountain Laurel.

Outside of the valuation map, [Appellant did not provide evidence or] reference to the specific acreage here at issue. Absent the valuation map, therefore, the record was devoid of evidence that any portion of the 30 acres once belonging to Frank Milton ever became part of [Appellant's] chain of title. Accordingly, while McAninch's claim to the 11.221 acres is not as strong as his claim to the 18.779 acres, [Appellant's] failure to establish a stronger title precludes a verdict in its favor.

Findings of Fact, 6/12/15, at 5-6 (emphasis added).

Moreover, in its order denying Appellant's motion for post-trial relief, the trial court further stated:

Although [the trial court] relied on the valuation map in granting partial summary judgment in [Appellant's] favor, it was not the map alone that attested to [Appellant's] ownership; it was merely corroborative of and coincided with other evidence of title. Conversely, [valuation map] V228A/29, as [the trial court] explained in its trial opinion, was the only evidence suggesting that [Appellant] had acquired Frank Milton's 30 acres. Whereas the record was clear that Consolidated in fact did not own at least 18.779 of those acres, [the trial court] was unwilling to accept the conveyance as proof that it owned and could convey the remaining 11.221 acres in the absence of other, corroborative evidence. Ultimately, therefore, [the trial court] concluded that [Appellant] did not establish a *prima facie* title, which meant that the parcel remained in [McAninch's] possession as a matter of law.

Order of Court, 3/24/15, at 1.

Upon review, we discern no error of law or capricious disregard of the evidence. Here, Appellant relied upon a railroad valuation map showing the two divided parcels as a single 30-acre tract of property coupled with a 1991

deed purporting to convey the subject 18.779 acres from Consolidated to Mountain Laurel. However, as the trial court noted, Consolidated was divested of that tract of land in a tax sale in 1988. As such, the trial court found the subsequent 1991 deed from Consolidated to Mountain Laurel was erroneous on its face because it purported to convey all 30 acres of the property without mention of the two parsed parcels. Thus, the trial court did not find the later 1991 deed from Consolidated to Mountain Laurel credible and, therefore, Appellant failed to produce evidence that the disputed property was conveyed to Appellant's predecessors.[3] We will not usurp that credibility determination. Thus, the only other evidence before the trial court was the railroad valuation map as referenced by the 1991 deed. However, this evidence was not enough to establish a *prima facie* case that Appellant had chain of title to the 11.221 acres. As the trial court noted, the 1991 valuation map showed two parcels totaling 30 acres. However, there is no dispute that the 30-acres were divided and then later rejoined. Thus, the trial court determined that a valuation map showing a single tract of land in 1991 was simply not corroborated. We discern no error. Accordingly, we agree that Appellant failed to establish a *prima facie* case by

_____

[3] In granting partial summary judgment on other property in dispute, the trial court found other deeds relevant. However, those deeds are not applicable in this line of conveyances.

showing title sufficient upon which to base a right of recovery and Appellant is not entitled to relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2016